FRIEDMAN, Senior Circuit Judge.
 

 The principal issue in this case, here on appeal from the United States District Court for the District of Minnesota (Murphy, J.), is whether certain payments a bankrupt company made to the appellant within 90 days of the filing of the bankruptcy petition were made in the ordinary course of business and therefore did not constitute a preference recoverable by the trustee in bankruptcy under the Bankruptcy Code, 11 U.S.C. § 547 (1988). The bankruptcy court held that the payments were not made in the ordinary course of business, and the district court affirmed. We reverse.
 

 I.
 

 The bankrupt, Transportation Systems International, Inc. (International), was a freight forwarder, consolidator and distributor. It did not own any trucks, but used the trucks of others to pick up and deliver freight. The appellant, St. Johnsbury Trucking (St. Johnsbury), is a common carrier of freight.
 

 In October 1985, International and St. Johnsbury entered into a written transportation agreement under which International agreed to forward freight it collected in the geographical area it served to St. Johnsbury, and to deliver in that area freight that St. Johnsbury furnished to it. The consideration for these services was a percentage of the amounts collected from shippers. The agreement provided that each party would pay the other “on or before the 30th day after the shipment” had been delivered.
 

 The parties operated under this agreement until June 10, 1987, when an involuntary bankruptcy petition was filed against International pursuant to 11 U.S.C. § 303 (1988). Prior to that time, each party regularly and frequently paid by check its current indebtedness to the other. In the 12 months preceding the 90 days before the filing of the bankruptcy petition (the 90-day period), St. Johnsbury deposited 259
 
 *496
 
 checks it received from International covering 720 invoices. St. Johnsbury deposited these payments, on average, 62 days after the date of invoice.
 

 During the 90-day period, International paid St. Johnsbury $245,883.96 for services rendered under the agreement. Following the filing of the bankruptcy petition, the appellee Lovett, the bankruptcy trustee of International, brought suit in the United States Bankruptcy Court for the District of Minnesota against St. Johnsbury to recover that amount as a voidable preference under 11 U.S.C. § 547(b). The trustee also sought to recover amounts receivable that St. Johnsbury allegedly owed to International. St. Johnsbury responded that those payments were made in the ordinary course of business and therefore were not recoverable by the trustee. St. Johnsbury also asserted that it was entitled to certain set-offs against the allegedly preferential payments and the indebtedness.
 

 After trial, the bankruptcy court found that the payments during the 90-day period had not been made in the ordinary course of business and constituted a preference. It also found that the trustee was entitled to collect another $102,000.00 that St. Johnsbury owed International in accounts payable. The court further ruled that St. Johnsbury was entitled to a set-off of $148,456.33, which constituted amounts receivable from International when the bankruptcy petition was filed. The bankruptcy court accordingly entered judgment for the trustee against St. Johnsbury for $199,427.63 ($245,883.96 plus $102,000.00, minus $148,456.33).
 

 In rejecting St. Johnsbury’s contention that the payments were made in the ordinary course of business, the bankruptcy court stated that “[f]or a number of reasons” it found St. Johnsbury’s “proof” of “a history of payment receipts by the defendant in the year prior to the bankruptcy, and [an assertion] that late payments, usually 60 to 70 days after invoice, were ordinary and usual,” to be “inadequate”:
 

 First, the transportation agreement itself defined the ordinary course of business between the parties, and it specified the terms governing those transactions. The agreement specifically provided that it could be modified only in writing; it further specifically provided that payments were to be made by the debtor within 30 days of the date of issue. Moreover, the debtor’s officers and employees have testified that the debtor ran into significant financial problems in early 1986, and was delaying payments as much as possible to all creditors; that payments to the defendant were made because the defendant was insisting on the 30 day time period contained in the transportation agreement; that meetings were held and telephone conversations were engaged in during which the defendant insisted that payments be accelerated as much as possible; and that at some point in early 1987, representatives of the plaintiff and the defendant met, the defendant insisted on accelerated payments, and the defendant suggested that if payments were not made within 30 days the business relationship could be jeopardized. The evidence appears to show, therefore, that the ordinary course of business was for payments to in fact be made within 30-45 days of invoice and that the defendant never consented to payments on any other terms.
 

 Lovett v. St. Johnsbury Trucking (In re Transportation Systems International, Inc.),
 
 Adv. No. 4-88-227 (Bankr.Minn. May 23, 1989) (Findings of Fact, Conclusions of Law and Order for Judgment).
 

 The district court affirmed.
 
 Lovett v. St. Johnsbury Trucking (In re Transportation Systems International, Inc.),
 
 Civ.No. 4-89-834, slip op. (D.Minn. Jan. 26, 1990). It held that the bankruptcy court’s conclusion that St. Johnsbury had “failed to meet” its burden of showing that the payments were made in the ordinary course of business “is not clearly erroneous. The evidence, including the written agreement and St. Johnsbury’s reactions to the late payments, supports the finding that the payment of $245,883.96 by [International] to St. Johnsbury was not in the ordinary course of business.”
 
 Id.
 
 at 5 (footnote omitted). The court also rejected two other grounds upon which St. Johnsbury chal
 
 *497
 
 lenged the bankruptcy court s decision.
 
 Id.
 
 at 5-7.
 

 II.
 

 A. Under 11 U.S.C. § 547(b), a bankruptcy trustee may avoid the transfer to a creditor of an interest in property by the debtor that is made (1) on or within 90 days before the date of the filing of the bankruptcy petition, (2) while the debtor was insolvent, (3) on account of an antecedent debt, and (4) which enables the creditor to receive more than it would have received in a bankruptcy liquidation. The bankruptcy court found that International’s payments to St. Johnsbury during the 90-day period met these requirements and thus prima facie constituted a preference. Although St. Johnsbury challenges the factual bases for those findings, we cannot say they are clearly erroneous.
 

 B. Section 547(e)(2) provides that a trustee cannot avoid under subsection (b) a transfer that was:
 

 (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
 

 (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
 

 (C) made according to ordinary business terms;
 

 11 U.S.C. § 547(c)(2).
 

 It is conceded that subsection (c)(2)(A) was met, since the payments were made to satisfy debts that International had incurred in the ordinary course of its business dealings with St. Johnsbury. The bankruptcy court found, however, that those payments were not made in the ordinary course of business or not made according to ordinary business terms, and therefore that St. Johnsbury had not substantiated its ordinary-course-of-business defense under section 547(c)(2). The court also stated, in its Conclusion of Law 4, that “[tjhe transfers were not made in the ordinary course of business between the debtor and the defendant.”
 

 To the extent those determinations were factual findings — as the district court apparently viewed them — they are clearly erroneous because they rest in part on an erroneous legal assumption and because they fail to reflect uncontroverted evidence in the record showing the ordinary course of business between International and St. Johnsbury. To the extent they are legal conclusions, they are incorrect.
 

 1. a. The first ground on which the bankruptcy court rested its decision was that “the transportation agreement itself defined the ordinary course of business between the parties, and it specified the terms governing those transactions,” namely, payment within 30 days of delivery. The ordinary course of business, however, was the way the parties actually conducted their business dealings, not the conditions specified in the agreement that the parties in fact rarely followed (as shown below). The bankruptcy court’s reliance on the provision in the agreement that payment would be made within 30 days was misplaced, and provides no support for that court’s conclusion that the payments were not made in the ordinary course of business. Indeed, if all the payments within the 90-day period had been made within 30 days of delivery, presumably the bankruptcy court would have held that they were made in the ordinary course of business, even though such payments would have been a drastic departure from the previous practice and presumably would have preferred St. Johnsbury over the other creditors.
 

 b. “[Tjhere is no precise legal test which can be applied” in determining whether payments by the debtor during the 90-day period were “made in the ordinary course of business”; “rather, th[e] court must engage in a ‘peculiarly factual’ analysis.”
 
 In Re Fulghum Construction Corp.,
 
 872 F.2d 739, 743 (6th Cir.1989) (quoting
 
 In Re First Software Corp.,
 
 81 B.R. 211, 213 (Bankr.D.Mass.1988)). “[Tjhe cornerstone of this element of a preference defense is that the creditor needs demonstrate some consistency with other business transactions between the debtor and the creditor.”
 
 In Re Magic
 
 
 *498
 

 Circle Energy Cory.,
 
 64 B.R. 269, 272 (Bankr.W.D.Okla.1986) (quoted with approval in
 
 WJM, Inc. v. Massachusetts Dept, of Public Welfare,
 
 840 F.2d 996, 1011 (1st Cir.1988)). In the present case, the analysis focuses on the time within which the debtor ordinarily paid the creditor’s invoices, and whether the timing of the payments during the 90-day period reflected “some consistency” with that practice.
 

 The record contains detailed information, which St. Johnsbury provided and which the trustee has not challenged, about the payments International made to St. Johns-bury under the agreement. The data covers two periods: The 12 months preceding the 90-day period, and the 90-day period itself.
 

 The 12-month period is an appropriate standard for determining the ordinary course of business between the parties. It began approximately three months after the parties had entered into the agreement and constituted approximately two-thirds of the time the business relationship between the parties existed. It reflected the normal operations under the agreement.
 

 Age of Invoice Percent (Number) of Total Invoices Paid
 

 12-month period 90-day period
 

 30 Days or Less 6.3% (45) 0.0% (0)
 

 31-45 Days 14.9% (107) 54.9% (67)
 

 46-60 Days 30.1% (217) 18.9% (23)
 

 61-75 Days 27.6% (199) 9.8% (12)
 

 76 Days or More 21.1% (152) 16.4% (20)
 

 A comparison of the payments during these two periods indicates that the times within which payments were made during the 90-day period were sufficiently consistent with the payment times during the prior 12 months to show that the payments in the 90-day period were made in the ordinary course of business.
 

 According to St. Johnsbury, the data show the following payment times for the 720 invoices International paid during the 12 months preceding the 90-day period and the 122 invoices paid during the 90-day period:
 

 St. Johnsbury further states that the average age of these invoices upon payment was 62 days for the 12-month period and 52 days for the 90-day period.
 

 “Normally, if late payments were the standard course of dealing between the parties, they shall be considered as within the ordinary course of business under § 547(c)(2).”
 
 In re Yurika Foods Corp.,
 
 888 F.2d 42, 44 (6th Cir.1989) (citation omitted).
 
 See also
 
 4
 
 Collier on Bankruptcy
 
 ¶ 547.10, at 547-51 (15th ed. 1990) (“Late payments may be held to be made in the ordinary course of business, when such payment practices were well-established between the parties.”) (citing Yurika). The ordinary course of business was that International consistently paid St. Johnsbury substantially later than the 30-day period in the contract.
 

 Although it appears that payment generally was made somewhat sooner in the 90-day period than during the preceding 12 months, the difference was not sufficiently significant to show that the payments during the 90-day period did not follow the ordinary course of business reflected in the prior 12 months. In both periods, there were substantial and significant delays in paying the bulk of the invoices, and this fact is dispositive even though the percent paid within 45 days in the 90-day period was considerably greater than in the prior 12-month period (54.9 percent versus 21.2 percent, respectively). The ordinary course of business between International and St. Johnsbury in paying the invoices was that International significantly and substantially delayed considerably beyond the 30 days specified in the contract, and that this practice continued during the 90-day period. This case, unlike
 
 In re Xonics Imaging Inc.,
 
 837 F.2d 763 (7th Cir.1988), thus is “one where the parties to a contract adopt
 
 *499
 
 an extra-contractual practice that becomes the ordinary course of business between them.”
 
 Id.
 
 at 767.
 

 In view of this unrebutted evidence, the other grounds upon which the bankruptcy court based its conclusion that the payments during the 90-day period were not made in the ordinary course of business are unpersuasive.
 

 The facts that International had “significant financial problems” in early 1986 and that St. Johnsbury insisted that International accelerate its payments “as much as possible,” do not undermine our conclusion that the 12-month period fairly reflected the parties’ ordinary course of business. It is hardly unusual for a creditor to urge its debtor to pay more promptly. There is not present here the kind of “economic pressure to obtain payment as soon as possible” that led the court to hold that payments were not made within the ordinary course of business in
 
 In re Seawinds Ltd.,
 
 888 F.2d 640, 641 (9th Cir.1989).
 

 Although the bankruptcy court stated that “[t]he evidence appears to show, therefore, that the ordinary course of business was for payments to in fact be made within 30-45 days of invoice,” the evidence we have set forth does not support that finding. It shows that only 21.2 percent of the invoices were paid within 45 days. The finding, therefore, is clearly erroneous.
 

 The bankruptcy court’s finding that at a meeting “in early 1987” St. Johnsbury “insisted on accelerated payments” and “suggested that if payments were not made within 30 days the business relationship could be jeopardized,” while perhaps explaining why there was some acceleration of payments during the 90-day period, does not justify the bankruptcy court's conclusion that the latter payments were not made in the ordinary course of business. Indeed, St. Johnsbury’s alleged insistence in early 1987 upon payment within 30 days is inconsistent with the fact that, unlike during the earlier period, no payments were made within that time during the 90-day period.
 

 2. Neither the bankruptcy court nor the district court separately discussed the requirement in subsection (c) that to satisfy the ordinary-course-of-business defense, the payments during the 90-day period also must have been “made according to ordinary business terms.” 11 U.S.C. § 547(c)(2)(C). The trustee does not attempt to show that the bankruptcy court found that the payments were not so made or that such finding is not clearly erroneous. Instead, he argues that “St. Johns-bury failed to prove that the preferential payments were made according to ordinary business terms,” which it states was “[t]he third element St. Johnsbury had to establish in order to prevail under the ordinary course of business defense.... ”
 

 We hold, however, that St. Johnsbury did so prove, and that any contrary finding of the bankruptcy court was clearly erroneous.
 

 International’s payments to St. Johns-bury during the 90-day period were made “according to ordinary business terms” because the manner, form, and timing of these payments were consistent with the practice both parties followed previously. As noted, the record shows that International regularly and frequently sent St. Johnsbury checks covering a number of invoices for services rendered. The fact that most of the payments were not made within 30 days is, for the reasons given in Part II.B., not inconsistent with their having been “made according to ordinary business terms.”
 

 To the extent, if any, that subsection (c)(2)(C) requires comparison between the payment record of the particular debtor and the general practice in the industry regarding the time of payment, St. Johns-bury introduced testimony by two of its officials that it is “common” in the trucking industry — even when 30-day payment terms are required by contract — for payments “to be made over a 30-day period” (i.e., after 30 days from the date of invoice) and that it is “[vjery common” in the industry “that people pass the 30 day period.” In the absence of any contrary evidence, this was sufficient to carry whatever burden St. Johnsbury may have had on this issue.
 

 
 *500
 
 C. “A finding is ‘clearly erroneous’ when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.”
 
 United States v. United States Gypsum Co.,
 
 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948);
 
 In re LeMaire,
 
 898 F.2d 1346, 1349 (8th Cir.1990)
 
 (en
 
 banc). On the entire evidence in this case, we are convinced that the bankruptcy court, in finding that the payments during the 90-day period were not made in the ordinary course of business, and the district court in affirming those findings, committed a mistake.
 

 D. In view of our conclusion on this issue, we find it unnecessary to reach St. Johnsbury’s alternative argument that under 11 U.S.C. § 547(c)(4) it was entitled to an offset against the payments it received from International during the 90-day period for the “new value” it allegedly gave to International during that period, and for the amounts it allegedly could have off-set against its indebtedness to International pursuant to Rule 132 of the American Trucking Association.
 

 CONCLUSION
 

 The judgment of the district court affirming the order of the bankruptcy court entering judgment for the trustee against St. Johnsbury for $199,427.63 is reversed. The case is remanded to the district court with instructions for that court to remand to the bankruptcy court for further proceedings consistent with this opinion.