In re VALLEY STEEL PRODUCTS COMPANY, INC., et al., Debtors.

The OFFICIAL PLAN COMMITTEE, on Behalf of the ESTATE OF VALLEY STEEL PRODUCTS COMPANY, INC., et al., Plaintiffs,

v.

G & M FABRICATING, INC., Defendant.

Bankruptcy No. 92–40778–293.

Adv. No. 93–4226–293.

United States Bankruptcy Court,
E.D. Missouri, E.D.

Dec. 30, 1993.

Wendi S. Alper, Vincent D. Vogler & Associates, St. Louis, MO, for defendant.

Robert E. Eggmann, Greensfelder, Hemker & Gale, P.C., St. Louis, MO, for Official Plan Committee.

## *MEMORANDUM OPINION*

DAVID P. McDONALD, Bankruptcy Judge.

### *JURISDICTION*

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(F), which the Court may hear and determine.

### *PROCEDURAL BACKGROUND*

(1) On or about February 4, 1992, the affiliated entities of Valley Steel Products Company, Inc., Valley Industries, Inc., Valley Steel Products Company Transportation, Inc., Valley Steel Products Company Redevelopment Corp. and Performance Pipe and Steel, Inc. (the affiliated Valley Steel companies or, simply, Valley) filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

(2) On February 5, 1992, the Office of the United States Trustee appointed the Official Unsecured Creditors' Committee in the Valley Steel Products Company, Inc. case.

(3) This Court entered an order, on March 11, 1993, consolidating the bankruptcy proceedings of the affiliated Valley Steel companies.

(4) The Court confirmed a plan of reorganization on March 8, 1993, which provided that the Official Plan Committee (Committee) had standing to prosecute Chapter 5 causes of action on behalf of the consolidated estate of the affiliated Valley Steel companies.

(5) The Committee filed an adversary Complaint on April 15, 1993 seeking to avoid and recover from, G & M Fabricating, Inc., (G & M) alleged preferential transfers totalling $34,111.45. The Debtor transferred this value to G & M by seven checks all dated between November 8, 1991 and January 30, 1992.

(6) G & M filed an Answer to the Committee's Complaint asserting, as an affirmative defense, that the allegedly preferential transfers were payments in the ordinary course of

business. The Defendant also defended the transfers as contemporary exchanges for new value.

(7) The Committee moved the Court for summary judgement. In its motion, the Committee admitted that $11,541.10 of the allegedly $34,111.45 of preferential payments represented new value that G & M provided to the Debtor and so prayed for a judgement from the Court finding that the Defendant received a preference in the amount of $22,-570.35.[1] To support its motion for summary judgement, the Committee filed the affidavit of Patrick Gilligan, Valley's Chief Financial Officer who provided financial and administrative assistance to the Debtor during its Chapter 11 case. Mr. Gilligan swore that during the ninety days preceding the filing of its petition in bankruptcy, the affiliated Valley Companies did not have sufficient cash to pay their debts as they became due and opted to selectively pay their creditors. To illustrate the cash crisis the Valley companies experienced, Mr. Gilligan pointed to the fact that, during the ninety days preceding their bankruptcy filings, those affiliated companies resorted to "pa[ying] creditors with raw materials or alloy inventory."

(8) In its reply to the Committee's motion for summary judgement, G & M agreed that $11,314.25 of the allegedly $34,111.45 in preferential transfers qualified for exemption from the trustee's avoiding powers[2] because G & M had given the Debtor new value in that amount. G & M also maintained that the Committee could not avoid the remaining $22,797.20 in alleged preferential transfers because Valley transferred that amount to the Defendant in the ordinary course of business. To support its opposition to the Committee's motion G & M filed a legal memoranda and the affidavit of its general manager, Michael Larocque. Mr. Larocque swore

that G & M had conducted business with the Debtor since the beginning of 1990 and that the Debtor had placed a special order with G & M in September of 1991 (order number 24718). Mr. Larocque stated that because order 24718 was beyond the scope of the parties' dealings and called for substantial outlays of labor and materials on G & M's part, G & M negotiated for more rapid payment than was usual from Valley. He also testified that "[n]otwithstanding the fact that purchase order 24718 was a significant departure from the parties (sic) prior business relationship, a review of Page 1 of the Plaintiff's Exhibit C[3] demonstrates that the average days between payments was 47.47 which is clearly within industry standards of 45 to 60 days." Mr. Larocque further stated that G & M had not used "any extraordinary means to collect the amounts due under the invoices now claimed to have been preferential transfers." Finally, Mr. Larocque swore that "[c]ustomers of G & M and other steel fabricators customarily pay invoices 45–60 days after the date of invoice, because that customer must first collect payment from its customer ... in cases of retainage, it can take up to 120 days for those payments to be made."

## FACTUAL BACKGROUND

Upon consideration of the entire record, the Court makes the following findings of fact:

(1) The Valley Steel Products Company (Valley) and G & M transacted business with one another from May of 1991 through January of 1992. In the time between May of 1991 and November 6, 1991, the ninetieth day preceding the filing of the Debtor's bankruptcy petition, G & M received payment from Valley on fifteen invoices it had issued to Valley for amounts Valley owed to G & M. Seven of these invoices were issued

---

1. The Committee's motion for summary judgement prays for judgement in this amount. However, in its response to G & M's filing, the Committee corrected its mathematical error and agreed with G & M that $22,797.20 worth of transfers remain in controversy.

2. As is noted above, the plan of reorganization vested in the Committee the power to pursue Chapter 5 claims on behalf of the estate.

3. Plaintiff's Exhibit C consists of three pages. The first page appears to be a summary of the data provided on the second two pages which chronicle the course of dealings between G & M and Valley, transaction by transaction. Unfortunately, the compiler of the summary failed to include three transactions in the summary. The Court has referred to both the summary and the unsummarized transaction data in making its findings of fact.

for work G & M did to complete work on order number 24718 which Valley had placed with it and eight of the invoices represented amounts Valley owed to G & M for work G & M did on orders other than purchase order number 24718. Debtor paid the fifteen invoices in times ranging from 8 to 110 days after the invoice date.

(2) During 1991, Valley placed order number 24718 (special order) with G & M which exceeded the scope of its prior dealings with G & M. To fulfill its part of the bargain G & M would have to invest substantial amounts in material and labor. G & M expressed to Valley its concerns of what long delays in collecting such sums could do to its business. In an apparent attempt to assuage G & M's financial concerns, Valley paid G & M on various invoices issued under the special order within thirty days of the issuance of those invoices, a sum totalling $50,278.78.

(3) From May of 1991 through November 6, 1991 Valley made payments to G & M on eight invoices issued under the special order and seven invoices issued pursuant to other purchase orders. For all fifteen invoices, G & M received payment from Valley, on average, 34.27 days after it issued each invoice to Valley. On average, Valley paid each of the seven non-special order invoices 56.29 days after its date of issue while it paid the amounts due under the invoices issued pursuant to the special order in an average of 15.00 days.

(4) The distribution of Valley's invoice payments to G & M for the three groups of invoices: the fifteen paid before the preference period (Group 1), those paid before the preference period other than those issued under the special order (Group 2) and those paid during the preference period (Group 3) is as follows:

| Invoice Age at Payment | Percent (Number) of Total Invoices Paid | | |
| --- | --- | --- | --- |
| | Group 1 | Group 2 | Group 3 |
| 30 days or less | 53.33% (8) | 0.00% (0) | 0.00% (0) |
| 31–45 days | 26.67% (4) | 57.14 (4) | 18.18% (4) |
| 46–60 days | 6.67% (1) | 14.28% (1) | 59.09% (13) |
| 61–75 days | 0.00% (0) | 0.00% (0) | 4.55% (1) |
| 76 days or more | 13.33% (2) | 28.57% (2) | 18.18% (4) |

(5) The Committee, in this adversary, challenges as preferences, twenty-two payments Valley made to G & M during the ninety days preceding the filing of its bankruptcy petition.

## DISCUSSION

■ This case presents the question of whether a court applying the Eighth Circuit's *Lovett v. St. Johnsbury Trucking*, 931 F.2d 494 (8th Cir.1991), decision should distinguish extraordinary dealings between the debtor and a creditor from their other dealings when defining the parties' ordinary course of dealing in the time preceding the preference period.

The language of the statute provides the answer. Section 547(c)(2) of the Bankruptcy Code (Title 11 of the United States Code) provides that:

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such a transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms;

11 U.S.C. § 547 (1978). The section refers to the "ordinary course of business or financial affairs of the debtor and the transferee." Had Congress intended to include extraordinary transactions between the debtor and the transferee in the set of transactions to which courts must refer in deciding whether a trustee may avoid a transfer then it would not have qualified "course of business or financial affairs" with the adjective "ordinary." For this reason, we hold that in now applying the Eighth Circuit's *Lovett v. St.*

*Johnsbury Trucking,* 931 F.2d 494 (8th Cir. 1991), decision we must distinguish the payments Valley made on invoices issued under the special order it placed with G & M from those not issued under the special order because those payments made on invoices issued pursuant to the special order do not fall within the parties' ordinary course of dealing in the time preceding the preference period. The Eighth Circuit's *Lovett* decision provides further support for the idea that a court should distinguish extraordinary transactions between the parties from other transactions in defining the ordinary course of dealing between the debtor and creditor. 931 F.2d at 498. The *Lovett* court, in discussing the twelve month period it used to define the ordinary course of conduct between the parties in that case explained that:

> The 12–month period is an appropriate standard for determining the ordinary course of business between the parties. It began approximately three months after the parties had entered into the agreement and constituted approximately two-thirds of the time the business relationship between the parties existed. It reflected the *normal* operations under the agreement.

931 F.2d at 498 (emphasis added). Again, an extraordinary transaction could not be considered as "normal."

The Debtor does not address G & M's contention that the payments on invoices issued under purchase order 24718 were not in the ordinary course of the parties' business. The only evidence before the Court on the issue of whether the payment of those invoices was in the ordinary course of business between the parties is the affidavit of Mr. Larocque, G & M's general manager. Mr. Larocque swore that Valley placed a special order with G & M in September of 1991 (order number 24718) and that because order 24718 was beyond the scope of the parties' dealings and called for substantial outlays of labor and materials on G & M's part, G & M negotiated for more rapid payment from Valley than usual. [Larocque Aff. at 2]. His testimony emphasized that "purchase order 24718 was a significant departure from the

parties (sic) prior business relationship." [Larocque Aff. at 3]. In its reply to G & M's memorandum in opposition to its motion for summary judgement, the Debtor stated that it "agree[d] that the actual amount in controversy is $22,797.20" but did not contest Mr. Larocque's characterization of purchase order 24718.

In *Lovett,* the Eighth Circuit confronted the issue of whether late payments on invoices can be payments in the ordinary course of business and so qualify as exceptions to the trustee's avoidance powers.[4]

The *Lovett* debtor, International Transportation Systems (International), was a "freight forwarder, consolidator and distributor" in the trucking business. 931 F.2d at 495. International and St. Johnsbury, a common carrier of freight, serviced different geographic areas. *Id.* A year and one-half before International filed for bankruptcy protection, the two trucking concerns entered into a reciprocal agreement under which each would collect freight in its region for delivery in the other's region and then forward that freight to the second concern who would deliver it to the destination within the region it regularly serviced. *Id.*

International's agreement with St. Johnsbury obligated the freight-forwarding party to pay the freight-receiving party a percentage of the amount the freight-forwarding company collected from the shipping customer "on or before the 30th day after the shipment." *Id.* St. Johnsbury and the debtor operated under the agreement until International filed its bankruptcy petition. *Id.* Despite the language in the reciprocal agreement requiring payment within thirty days, International consistently paid St. Johnsbury for its services much more than thirty days after the date of the shipment. 931 F.2d at 496. In fact, during the year preceding the ninety-day preference period, International, on average, paid St. Johnsbury for its services sixty-two (62) days after the shipment date. *Id.*

During the ninety-day preference period, International paid St. Johnsbury for services

---

4. As the Court has previously noted, the plan of reorganization in this case vested in the Commit- tee the power to pursue Chapter 5 claims on behalf of the estate.

St. Johnsbury had performed pursuant to the reciprocal agreement. 931 F.2d at 496. On average, the invoices paid during the preference period were fifty-two (52) days old. 931 F.2d at 498. The trustee of International's estate challenged, as preferences, those payments International made to St. Johnsbury during the preference period for services rendered more than thirty days before the payment date.[5] *Id.* at 496. St. Johnsbury countered the trustee's preference action with the defense that International had made the payments in the ordinary course of its business which brought those payments within the scope of Bankruptcy Code section 547(c)(2)'s exception to the trustee's avoiding powers.

The Bankruptcy Court held that the payments made during the preference period to St. Johnsbury for services rendered more than thirty days before payment were preferential transfers and that they did not qualify for the Code's ordinary course of business exception to the trustee's avoiding powers. The District Court affirmed the Bankruptcy Court's decision. The Eighth Circuit affirmed the lower courts' determination that International's payments to St. Johnsbury during the preference period for services rendered more than thirty days before payment were preferences. 931 F.2d at 497. However, the Circuit Court reversed the bankruptcy court's finding that the challenged late payments did not qualify as payments made in the ordinary course of business. *Id.*

The Eighth Circuit reasoned that late payments can be payments in the ordinary course of business when the creditor trying to establish the exception to the trustee's avoiding powers shows that the late payments were consistent with how the parties had previously conducted their business. *Id.* at 497. The Circuit noted that the determination of whether a late payment is within the ordinary course of business of two parties is "peculiarly factual." 931 F.2d at 497 (quoting *In re Fulghum Construction Corp.,* 872 F.2d 739, 743 (6th Cir.1989)). The Court emphasized that to prevail on the theory that a late payment was in the ordinary course of business and so beyond the scope of the trustee's avoiding powers, a "creditor must demonstrate some consistency with other business transactions between the debtor and the creditor." 931 F.2d at 497 (citation omitted).

Applying the law to the evidence St. Johnsbury presented, the Eighth Circuit concluded that St. Johnsbury had proven that the payments International made to it during the preference period, though late under the terms of the reciprocal agreement, were payments in the ordinary course of business between the parties. St. Johnsbury had entered into evidence records of payments International had made to St. Johnsbury over the year preceding the preference period and records showing the debtor's payments to St. Johnsbury during the preference period. *Id.* at 498. The Circuit Court condensed that data into the following table which it included in its opinion:

| Age of Invoice | Percent (Number) of Total Invoices Paid | |
| | 12–month period | 90–day period |
| 30 Days or less | 6.3% ( 45) | 0.0 ( 0) |
| 31–45 Days | 14.9% (107) | 54.9% (67) |
| 46–60 Days | 30.1% (217) | 18.9% (23) |
| 61–75 Days | 27.6% (199) | 9.8% (12) |
| 76 Days or More | 21.1% (152) | 16.4% (20) |

931 F.2d at 498.

The Circuit Court compared the two payment schedules and recognized that late payment on invoices issued under the reciprocal

---

**5.** The trustee also sued St. Johnsbury to collect those of the debtor's accounts receivable representing charges for services International had performed for St. Johnsbury under the reciprocal agreement. 931 F.2d at 496.

agreement was the standard practice between the parties. *Id.* The Court found that in both the year before the preference period and in the preference period, St. Johnsbury's evidence showed that International paid the "bulk of the invoices" evidencing sums owed to St. Johnsbury only after "substantial and significant delays." *Id.* The Eighth Circuit held this fact to "be dispositive" of whether the late payments were in the ordinary course of business, despite proof that during the preference period International paid St. Johnsbury for its services, on average, about ten days sooner than it had done in the year preceding the preference period. *Id.*

 The case at bar differs from *Lovett* significantly. In *Lovett,* the creditor, St. Johnsbury, introduced evidence documenting over 700 transfers between the parties that occurred in the year before the preference period. 931 F.2d at 498. Here, G & M has only introduce evidence of seven, ordinary transfers between it and Valley that occurred in the time predating the ninetieth day before Valley filed its bankruptcy petition. The Court cannot discern a pattern of conduct from such a limited sample of experience.

Without a significant sample of experience to draw upon, the Court has nothing against which it can measure the parties' behavior during the preference period as *Lovett* requires and without such evidence, the Court cannot find that G & M has demonstrated any consistency between the payments Valley made to it during the preference period and the other business transactions the two parties conducted with one another. Therefore, the Court must find that G & M has not carried its burden of proving that Valley's transfer of $22,979.20 to it during the ninety days immediately preceding the filing of Valley's bankruptcy were made in the ordinary course of business between the parties so as to qualify, under section 547(c)(2)(C) of the Bankruptcy Code, for exemption from the trustee's avoiding powers.

An Order consistent with this Memorandum Opinion will be entered this date.