61 F.3d 900
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In Re: NATIONAL ENTERPRISES, INCORPORATED, Debtor.
NATIONAL ENTERPRISES, INCORPORATED LIQUIDATING TRUST,
Plaintiff-Appellee,
v.
ASSOCIATES LEASING, INCORPORATED, Defendant-Appellant.
 No. 95-1223.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 12, 1995.
Decided: August 1, 1995.
 
 ARGUED: Earl F. Leitess, Steven Neal Leitess, LEITESS & ASSOCIATES, P.A., Baltimore, MD, for Appellant. Andrew Joseph Dolson, CHRISTIAN, BARTON, EPPS, BRENT & CHAPPELL, Richmond, VA, for Appellee. ON BRIEF: Augustus C. Epps, Jr., CHRISTIAN, BARTON, EPPS, BRENT & CHAPPELL, Richmond, VA, for Appellee.
 Before WILKINSON and WILKINS, Circuit Judges, and G. ROSS ANDERSON, JR., United States District Judge for the District of South Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 In this case, the issue is whether three lease payments by the bankrupt debtor National Enterprises, Inc. to Associates Leasing, Inc. that would otherwise be avoidable preferences under 11 U.S.C. Sec. 547(b) can qualify for the "ordinary course of business" exception under 11 U.S.C. Sec. 547(c)(2). The bankruptcy court concluded that because the three monthly payments were made substantially later than usual, they did not qualify for the exception. The district court affirmed that finding. Because we cannot say that the bankruptcy court's conclusion was clearly erroneous, we affirm.
 
 I.
 
 2
 National Enterprises, Inc. ("NEI") filed for bankruptcy under Chapter 11 on December 10, 1990. Under a Plan of Liquidation confirmed by the court, a Liquidating Trust ("the Trust") was created to manage NEI's affairs. Among the duties of the Trust was the obligation to seek the return of any moneys paid out by NEI which might qualify as preferential transfers. Avoidable preferences are defined under 11 U.S.C. Sec. 547(b), which states in part that:
 
 
 3
 the trustee may avoid any transfer of an interest of the debtor in property--
 
 
 4
 (1) to or for the benefit of a creditor;
 
 
 5
 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 
 
 6
 (3) made while the debtor was insolvent;
 
 
 7
 (4) made ... on or within 90 days before the date of the filing of the petition ...; and
 
 
 8
 (5) that enables such creditor to receive more than such creditor would receive if
 
 
 9
 (A) the case were a case under chapter 7 of this title;
 
 
 10
 (B) the transfer had not been made; and
 
 
 11
 (C) such creditor received payment of such debt to the extent provided by provisions of this title.
 
 
 12
 11 U.S.C. Sec. 547(b). The 90-day preference period for NEI in this case began on September 11, 1990 and ran until December 10.
 
 
 13
 On December 9, 1992, the Trust brought this action to recover three payments made by NEI to Associates Leasing, Inc. ("ALI") during the preference period which together totalled $122,253.39. These monthly transfers were made pursuant to a lease agreement whereby NEI leased trucks from ALI for the transportation of goods. The first payment occurred on September 24, 1990 and was for $ 40,653.54. The second transfer was on October 22, 1990, and was for the same amount. The third disputed payment was on November 29 in the amount of $ 40,946.31.
 
 
 14
 It is undisputed that all three transfers facially constituted preferential payments within the meaning of Sec. 547(b). The only issue before the bankruptcy court was whether these payments qualified for the exception under 11 U.S.C. Sec. 547(c)(2) for transfers made in the ordi nary course of business. The exception under Sec. 547(c)(2) consists of three elements. First, the payment must be for a debt incurred in the ordinary course of business. 11 U.S.C. Sec. 547(c)(2)(A). Second, payment must be "made in the ordinary course of business or financial affairs." 11 U.S.C. Sec. 547(c)(2)(B). Third, the payments must be "made according to ordinary business terms." 11 U.S.C. Sec. 547(c)(2)(C).
 
 
 15
 At trial, there was no dispute that the first element of the Sec. 547(c) exception was satisfied. The focus of the bankruptcy court's inquiry was on the second element: whether the payments were made in the ordinary course of business. This question turned on the billing and payment practices by the two parties both before and during the preference period. The bills from ALI were due on the first of each month. During the preference period, each of the three payments by NEI was more than 20 days late (an average of 25 days late). During the three years prior to preference period, payments averaged only 6.86 days late. In the nine months immediately prior to the preference period, NEI's payments were about twelve days late on average. Thus, there was a noticeable increase in the lateness of the payments as NEI slid closer to bankruptcy.
 
 
 16
 An officer of ALI, Patrick McKerring, was the only witness to testify about the creditor's billing practices. ALI used a thirty day billing cycle. McKerring explained that only the bills that were more than 60 days late were referred to ALI's senior management for investigation. Because NEI's payments were never more than 30 days late, ALI never noticed the delinquency or inquired as to the reason for the delays.
 
 
 17
 The bankruptcy court found that the three transfers at issue were "unusually late" and amounted to a "perceptible" departure from past practice. The court found it particularly notable that the lateness of the payments increased significantly during the preference period. This increase of roughly eighteen days in delinquency meant that the transfers were not a part of the "ordinary" course of business between the parties. Thus, the court concluded that the payments did not qualify under Sec. 547(c)(2)(B). The court therefore did not reach the issue of the applicability of Sec. 547(c)(2)(C). This result was affirmed by the district court. ALI now appeals from that decision.
 
 II.
 
 18
 The arguments of both parties in this case revolve around competing policy considerations in Sec. 547 of the Bankruptcy Code. The crux of ALI's argument is that the bankruptcy court's "average days late" analysis was flawed because the leasing company actually used a 30-day billing cycle and so never realized that NEI's payments during the preference period were later than usual. The bankruptcy court's ruling, ALI argues, forces companies to depart from their standard billing practices when dealing with late payments from potential bankrupts, and will compel stricter treatment of delinquent debtors. This conflicts with the intent of Sec. 547(c): to protect regular business transactions from the disruptions caused by impending bankruptcy and prevent creditors from exacerbating a debtor's slide into bankruptcy by demanding timely payments. See In re Barefoot, 952 F.2d 795, 801 (4th Cir.1991).
 
 
 19
 These policy considerations are counterbalanced, however, by the competing policies advanced by the Trust. The main purpose of Sec. 547(b)'s rule against preferences is to ensure equal treatment among all creditors during bankruptcy. H.R.Rep. No. 595, 95th Cong., 1st Sess. 177-78 (1977), reprinted in 1978 U.S.C.C.A.N. at 6137-39; Advo-System, Inc. v. Maxway Corp., 37 F.3d 1044, 1047 (4th Cir.1994). In an effort to ensure equal distribution of assets, Congress barred any unusual actions by either the creditor or the debtor that might favor one creditor over others. See In Re Barefoot, 952 F.2d at 801. A debtor's action in stretching out limited funds just prior to bankruptcy by making increasingly late payments to one creditor could well serve to favor that creditor. Such payments would be every bit as preferential as payments made as a result of special pressure by a creditor.
 
 
 20
 We believe that these legitimate competing interests are best kept in equipoise by treating the issue as one of fact for bankruptcy courts to resolve on a case-by-case basis. Indeed, whether or not late payments constitute preferences is, at heart, a factual matter that depends on the various circumstances of a particular case. In re Jeffrey Bigelow Design Group, Inc., 956 F.2d 479, 486 (4th Cir.1992). Courts generally look to a variety of factors to ascertain whether or not companies were conducting "ordinary business" during the preference period. See, e.g., Lovett v. St. Johnsbury Trucking, 931 F.2d 494 (8th Cir.1991); In re Century Brass Products, Inc., 121 B.R. 136 (Bankr.D.Conn.1990); In re Southern Commodity Corp., 78 B.R. 626 (Bankr.S.D.Fla.1987).
 
 
 21
 Bankruptcy courts have broad discretion to find the facts that are critical to this analysis. Appellate review of such factual determinations falls under the clearly erroneous standard. In Re Barefoot, 952 F.2d at 801; In re Fulghum Const. Corp., 872 F.2d 739, 742 (6th Cir.1989). Moreover, where, as here, the district court has affirmed the bankruptcy court's determination, particular deference should be paid to those factual findings. See Birmingham Trust National Bank v. Case, 755 F.2d 1474, 1476 (11th Cir.1985). Even were an appellate court to suspect it might reach a different result on the facts of a particular case, it should not reverse the trial court's finding unless it was plainly incorrect.
 
 
 22
 Here, we cannot say that the bankruptcy court's decision that the payments were preferential was clearly erroneous. It is undisputed that the three payments at issue were made significantly later than had been the practice of NEI prior to the preference period. Such a pattern certainly might have reflected an attempt by NEI to stretch out its funds and thereby favor ALI over other creditors. Thus, it was not clear error for the bankruptcy court to conclude that the payments did not fall within the "ordinary course of business" exception.
 
 
 23
 By so holding, we do not mean to suggest that late payments by a debtor will always constitute preferential transfers. It may well be the case that such payments are within the ordinary course of business and so are not avoidable by the trustee. See 4 Collier on Bankruptcy 547.10, at 551 (15th ed.1990) (noting late payments may be ordinary if part of a well-established pattern between the parties). Our ruling is a narrow one--namely that a discrete finding of fact should be upheld.
 
 III.
 
 24
 For the foregoing reasons, the judgment in this case is
 
 
 25
 AFFIRMED.