**In re R.M. TAYLOR, INC., Debtor.**

**R.M. Taylor, Inc., Plaintiff,**

**v.**

**Employers Insurance of Wausau, a Mutual Company, and Wausau Insurance Companies, Defendants.**

**Bankruptcy No. 97–41320.
Adversary No. 99–4132.**

United States Bankruptcy Court,
W.D. Missouri,
Kansas City Division.

Feb. 11, 2000.

**14.** Doc. # 11, Ex. A.

**15.** 11 U.S.C. § 544(a)(1).

**16.** *Rouse v. Chase Manhattan Bank, U.S.A., N.A. (In re Brown)*, 226 B.R. 39, 45 (W.D.Mo. 1998).

Frank Wendt, Niewald, Waldeck & Brown, Kansas City, MO, for Plaintiff.

Reid F. Holbrook, Jeffrey A. Bullins, Holbrook, Heaven & Fay, Kansas City, KS, for Employers Insurance of Wausau and Wausau Insurance Companies.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Chief Judge.

Debtor in possession R.M. Taylor, Inc. (RMT) filed this adversary proceeding to avoid alleged preferential transfers to defendants Employers Insurance of Wausau and Wausau Insurance Companies (Wausau) totaling $246,359. Wausau claims the transfers were in the ordinary course of business, or a contemporaneous exchange for new value, or a subsequent exchange for new value, and, thus, excepted from avoidance. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I find that the transfers made by RMT to Wausau on January 14, 1997, and February 14, 1997, in the total amount of $100,000, were in the ordinary course of business and are, thus, excepted from avoidance. I further find that the transfers made by RMT to Wausau on February 17, 1997, and February 21, 1997, in the total amount of $146,359, are preferential and, thus, will be avoided.

## FACTUAL BACKGROUND

RMT was an automated material handling systems' integrator. In other words, it designed, engineered, fabricated, installed, and maintained material handling systems. As such, RMT was required by law to maintain worker's compensation insurance on its employees. If a high risk employer cannot obtain that worker's compensation insurance from the "voluntary market," it must obtain it from the "assigned risk" or "residual market." RMT was considered a high risk employer in Michigan when it began a project in that state in 1994. It, therefore, obtained worker's compensation insurance through the "assigned risk pool." The insurance coverage was randomly placed with Wausau. RMT continued to purchase worker's compensation insurance through the residual market from Wausau through 1995. Wausau routinely provided insurance to RMT for a policy period of 12 months, based upon its estimate of the cost. RMT initially paid 25 percent of the estimated premium. The balance of the estimated premium was amortized over a 12 month-period of time, and RMT made monthly payments based upon that schedule. At the end of the policy period, Wausau performed an audit of RMT's payroll, pursuant to the terms of the insurance policy, to determine the actual, as opposed to estimated, cost of providing insurance to RMT. Wausau estimated the cost of worker's compensation insurance for the policy period of January 1, 1995, to January 1, 1996 (the Policy Period). Based on that estimate, RMT paid the initial deposit of $92,060 and monthly installments of $35,688. In February of 1996, Wausau performed an audit of RMT's payroll for the Policy Period and determined that RMT owed Wausau an additional $596,359 in unpaid worker's compensation premiums. On May 15, 1996, RMT and Wausau entered into an agreement whereby RMT

would pay to Wausau the unpaid worker's compensation premiums pursuant to the following terms: (1) RMT would make 11 equal monthly installments of $50,000 on the last day of the month beginning on May 30, 1996, and continuing on the 30th day of each succeeding month until February 28, 1997; (2) thereafter, payments were due on the 28th day of the month until April 28, 1997, when the 12th payment would be due; and (3) the 12th payment would be in the amount of $46,359. RMT commenced payments on May 30, 1996, as required by the agreement. It continued to make payments in the following amounts and on the following dates:

| Amount | Date |
| --- | --- |
| $50,000 | 5/30/96 |
| 50,000 | 6/28/96 |
| 50,000 | 7/30/96 |
| 50,000 | 8/28/96 |
| 50,000 | 10/07/96 |
| 50,000 | 11/04/96 |
| 50,000 | 12/14/96 |
| 50,000 | 1/14/97 |
| 50,000 | 2/14/97 |
| 100,000 | 2/17/97 |
| 50,000 | 2/21/97 |

RMT actually overpaid Wausau by the sum of $3,641, and on or about March 27, 1997, Wausau refunded that sum to RMT. On April 11, 1997. RMT filed this Chapter 11 bankruptcy petition, thus, RMT transferred the sum of $250,000 to Wausau within 90 days of filing its bankruptcy petition. Wausau has returned the sum of $3,641, therefore, the debtor in possession seeks to avoid as preferential transfers the sum of $246,359.

On January 24, 2000, this Court held a hearing. While Wausau presented three defenses in its Trial Brief of Defendants,[1] most of the evidence it produced at the hearing went to prove RMT made the payments in the ordinary course of business.

I begin with a brief analysis of preferential transfers.

*DISCUSSION*

An avoidable preferential transfer is a transfer of a debtor's interest in property; made on or within 90 days prior to the debtor filing the bankruptcy petition; to or for the benefit of a creditor; for or on account of a antecedent debt owed by the debtor prior to said transfer; made while the debtor was insolvent, which entitled the paid creditor to receive more than it would receive in a Chapter 7 liquidation of the estate:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.[2]

I find that RMT has proved all of the elements of a preferential transfer. The parties do not dispute that RMT transferred the net sum of $246,359 to Wausau within 90 days of the bankruptcy petition, that the transfer was on account of an

---

1.  Doc. # 37.

2.  11 U.S.C. § 547(b).

antecedent debt, and that Wausau received more than it would have received in a Chapter 7 liquidation. Wausau did, however, raise the issue of solvency in its Pre–Trial brief. At the hearing RMT called as a witness Richard Mills, a Certified Public Accountant who acted as a consultant for RMT in 1996. Mr. Mills testified that he consulted with RMT personnel in preparing the Balance Sheet for RMT for the period ending December 31, 1996. That Balance Sheet showed negative capitalization in the amount of $5,315,516.28.[3] Mr. Mills also acted as a consultant for RMT in the preparation of the Balance Sheet for the period ending March 21, 1997. That Balance Sheet showed negative capitalization in the amount of $5,715,971.15.[4] RMT filed its Chapter 11 bankruptcy petition on April 11, 1997. Mr. Mills stated that he continued to work as a consultant for RMT after the bankruptcy petition was filed, and that RMT did not have positive capitalization at any time between January 11, 1997, and April 11, 1997. Counsel for Wausau did not cross-examine Mr. Mills, or dispute his testimony. I, therefore, find that RMT was insolvent at all times during the 90 days prior to filing its bankruptcy petition.

■ Even after a trustee or debtor in possession proves the elements of a preferential transfer, however, the defendant may prove that one or more exceptions exist to prevent avoidance of the transfer.[5] For example, as Wausau argues, the Code does not permit a transfer to be avoided if it was made in the ordinary course of business, if the debtor received new value in exchange for the transfer, or if the debtor received subsequent value for the transfer:

> (c) The trustee may not avoid under this section a transfer—
>
> > (1) to the extent that such transfer was—

> > (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
> >
> > (B) in fact a substantially contemporaneous exchange;
>
> > (2) to the extent that such transfer was—
>
> > (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee; and
> >
> > (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
> >
> > (C) made according to ordinary business terms;
>
> .    .    .    .    .
>
> > (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
>
> > (A) not secured by an otherwise unavoidable security interest; and
> >
> > (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.[6]

Wausau first claims that all the payments RMT made to Wausau within 90 days of filing were in the ordinary course of business, therefore, they are all excepted from avoidance. There is, however, a distinction between the two payments made on January 14, 1997, and February 14, 1997, and the two payments made thereafter. The payment made on January 14, 1997, in the amount of $50,000, was in satisfaction of the obligation due on December 30, 1996, therefore, the payment was 15 days late. The payment made on February 14, 1997, in the amount of $50,000, was in satisfaction of the obligation due on January 30, 1997, therefore, that payment was

---

**3.**   RMT Ex. # 47.

**4.**   RMT Ex. # 48.

**5.**   11 U.S.C. § 547(c).

**6.**   11 U.S.C. § 547(c)(1), (2), and (4).

15 days late. The payment made on February 17, 1997, on the other hand, in the amount of $100,000, was made in satisfaction of the obligations due on February 28, 1997, and March 28, 1997, therefore, the payment was, in one instance, 11 days early, and in the other instance, 39 days early. The payment made on February 21, 1997, in the amount of $50,000 was made in satisfaction of the obligation due on April 28, 1997, therefore, the payment was 60 days early. For purposes of this analysis, I must deal with the early payments, and the defenses thereto, separately from the late payments.

### A. *The Early Payments*

■ Wausau raises the same three defenses to all four transfers. I find, however, by definition, a payment made before it is due and owing cannot be a contemporaneous exchange for new value. The Bankruptcy Code protects from avoidance a transfer of money made contemporaneously in exchange for new value.[7] New value includes goods or services provided by the creditor.[8] To determine new value the Court must find that a debtor received property of value in exchange for the payment.[9] Wausau argues that RMT needed to make all of the payments under the agreement to prevent cancellation of its current worker's compensation insurance. Wausau, therefore, argues that the value RMT received with each payment was Wausau's forbearance from reporting a default. That argument must fail in light of payments made before they were due and owing, as Wausau could not forbear from claiming a default before a default had occurred.

■ Likewise, Wausau argues that RMT received subsequent new value in exchange for the early payments. The Bankruptcy Code excepts from avoidance payments made within 90 days of the bankruptcy filing to the extent unsecured new value is given to the debtor after the payments are made.[10] That exception is premised on the assumption that if a creditor gives additional new value to a debtor in reliance on a payment having been made on an antecedent debt, the assets of the estate are not depleted to the disadvantage of other creditors.[11] According to Wausau, it provided new value to RMT by allowing it to pay the final premium in installments, retain a good credit standing, and maintain insurance coverage. The problem with this argument is that none of that new value was extended during the preference period. Wausau and RMT reached the agreement to allow installment payments on the final premium in May of 1996. Wausau could not harm RMT's credit standing or report RMT as being in default in paying the final premium until RMT was in default. By making the final three payments before they were due and owing, RMT was not in default, therefore, Wausau did not give RMT any subsequent new value for the payments. I, therefore, find that the above defenses must fail as to the two early payments in the net amount of $146,359.

■ The Bankruptcy Code allows avoidance of preferential transfers in order to prevent payments to certain creditors and not to others.[12] This avoidance power is intended to accomplish two primary goals. The first goal is to discourage creditors from racing to the courthouse to put undue pressure on a debtor in financial distress.[13] The second is to encourage *pro*

---

7. 11 U.S.C. § 547(c)(1).

8. 11 U.S.C. § 547(c)(2).

9. *Green v. Chang (In re C.P.P. Export & Import, Inc.)*, 132 B.R. 962, 965 (D.Kan.1991).

10. 11 U.S.C. § 547(c)(4).

11. *Jones Truck Lines, Inc. v. Full Serv. Leasing Corp. (In re Jones Truck Lines, Inc.)*, 83 F.3d 253, 258 (8th Cir.1996).

12. *Kenan v. Fort Worth Pipe Co. (In re George Rodman, Inc.)*, 792 F.2d 125, 127 (10th Cir. 1986).

13. *Farmers Bank of Clinton, Mo. v. Julian*, 383 F.2d 314, 327 (8th Cir.1967).

*rata* distribution among all creditors, even if no one creditor is paid in full.[14] There is no evidence that Wausau put any undue pressure on RMT to make any payments before they were due and owing. And, Wausau argues that if RMT had waited until the due date to make the payments due in February, March, and April, the payments would have been in the ordinary course of RMT's business, therefore, they would be excepted from avoidance. This argument presumes that RMT would have had the funds to make the February, March, and April payments had it waited. Of course, by the time the last payment came due, on April 28, 1997, RMT had already filed its Chapter 11 case, and it was, thereby, prohibited from making such a payment.[15] In any event, the fact that Wausau might have been paid later, if RMT had the funds available to make the payments at that later date, is irrelevant, since the same can be said for other creditors who were not paid. The issue is whether the payments that were, in fact, made were in the ordinary course of business.

■■■ This Court could not find a case in which a debtor had actually made payments to a creditor before the payments were due and owing. Wausau cited several cases for the premise that a transfer was not *per se* out of the ordinary course just because the payment was made sooner than was the customary practice of that debtor. Wausau cited *The Official Unsecured Creditor's Committee of Ed Jefferson Contracting, Inc. v. Ford Motor Credit Company (In re Ed Jefferson Contracting, Inc.)*,[16] where the debtor on average made payments to Ford Motor Credit Company 57.19 days late.[17] One payment made within the preference period was 41 days late. The second payment made within the preference period was 23 days late. The court held that "[a]lthough Payment Two was made thirty-four days earlier than the average delay between Debtor and Ford during the pre-preference period, ... it was made well within the range of late payments made during the pre-preference period."[18] Wausau argues that this case stands for the premise that payments made up to 34 days before the payments were due are considered in the ordinary course of business. I disagree that the Court so held. Nowhere in *Ed Jefferson Contracting, Inc.* opinion does the Court even discuss payments made, during the preference period, before they are due and owing. The other cases upon which Wausau relies also deal with payments made in the preference period that were not quite as late as payments had been in the pre-preference payment.[19] Wausau also relies on *Lovett v. St. Johnsbury Trucking (In re Transportation Systems International, Inc.)*,[20] for the principle that a 10–day decrease in the average delay before payment was not significant.[21] But, *Lovett* did not involve payments that were made before they were due. Likewise, in *Central Hardware Co. v. Sherwin Williams*

---

14. *Jones Truck Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund (In re Jones Truck Lines, Inc.)*, 130 F.3d 323, 326 (8th Cir.1997).

15. 11 U.S.C. § 549(a).

16. 224 B.R. 740 (Bankr.E.D.Mo.1998).

17. *Id.* at 745.

18. *Id.* at 746.

19. *See, e.g., Official Plan Committee ex rel. Estate of Valley Steel Products Co. v. White-wood Transportation, Inc. (In re Valley Steel Products Co.)*, 166 B.R. 1006, 1010 (Bankr. E.D.Mo.1993) (finding payments made late, but 17 days less late than the next late payment, was not significant); *Official Plan Committee ex rel. Estate of Valley Steel Products Co. v. Zamzow Mfg. Inc. (In re Valley Steel Products Co.)*, 166 B.R. 1001, 1006 (Bankr. E.D.Mo.1993) (holding that a payment made 14 days earlier than the next late payment was not preferential).

20. 931 F.2d 494 (8th Cir.1991).

21. *Id.* at 497.

*Co. (In re Spirit Holding Co.),*[22] the Eighth Circuit stated that the absence of unusual collection practices on the part of a creditor did not necessarily make transfers ordinary. Instead, the Court stated it must determine whether the action was unusual on the part of either the debtor or the creditor.[23] The Eighth Circuit began its analysis by commenting that the payment "conformed to the ordinary financial dealings between the parties, as it was neither unusually early or late."[24] Wausau points out that RMT made a payment on June 28, 1996, that was not due until June 30, 1996, therefore, the payment was two days early. RMT also made a payment on August 28, 1996, that was not due until August 30, 1996, therefore, it also was two days early. I note that June 30, 1996, fell on a Sunday, but that August 28, 1996, fell on a Wednesday. Wausau thus argues that these two early payments in the pre-preference period mean that it was in the ordinary course of business dealings between these parties, prior to the preference period, for payments to be made early. But the payments at issue here involved one check for $100,000, that included a payment for a debt not due for 11 days and a payment for a debt not due for 39 days, and another check for $50,000 for a debt not due for 60 days. Such payments are not in the ordinary course of the business dealings of debtor and Wausau.[25] I find that the payments made by RMT, during the preference period and before they were due, were not consistent with the practice followed previously by the parties. As such, the transfers represented by the early payments are avoidable, and I will enter judgment in favor of RMT in the amount of $146,359.

### B. *The Late Payments*

RMT also made two other payments to Wausau during the preference period. On January 14, 1997, RMT paid to Wausau the sum of $50,000 pursuant to the agreement. That payment was due on December 30, 1996. On February 14, 1997, RMT paid to Wausau the sum of $50,000 pursuant to the agreement. That payment was due on January 30, 1997. The Eighth Circuit instructs that a Court must engage in a peculiarly factual analysis in determining whether payments made by a debtor during the preference period are made in the ordinary course of business.[26] To that end, a transfer in the ordinary course of business must satisfy three characteristics: (1) it must be for a debt incurred in the ordinary course of business; (2) it must be made in the ordinary course of business or financial affairs of the debtor and the transferee; and (3) it must be made according to ordinary business terms.[27] Or, stated another way, Courts must generally look at the prior conduct of the parties, the common industry practice, and whether the payment resulted from any unusual action by either the creditor or the debtor.[28] Wausau provided worker's compensation insurance to RMT from September 14, 1993 to January 1, 1996. At the end of the Policy Period Wausau conducted an audit to determine the actual, as opposed to estimated, premium owed by RMT. The audit revealed that RMT owed Wausau the sum of $596,359 in un-

**22.** 153 F.3d 902 (8th Cir.1998).

**23.** *Id.* at 904.

**24.** *Id.*

**25.** *See Cassirer v. Herskowitz (In re Schick),* 234 B.R. 337, 348 (Bankr.S.D.N.Y.1999) (where the Court held that a debtor's early repayment of an obligation was *not* in the ordinary course of business between the parties).

**26.** *Lovett v. St. Johnsbury Trucking (In re Transportation Systems International, Inc.),* 931 F.2d 494, 497 (8th Cir.1991).

**27.** *Central Hardware Co. v. Sherwin Williams Co. (In re Spirit Holding Co.),* 153 F.3d 902, 904 (8th Cir.1998); 11 U.S.C. § 547(c)(2).

**28.** 5 Collier on Bankruptcy ¶ 547.04[2][a] at 547–48 (Lawrence P. King, ed., 15th ed. rev. 1999).

paid premiums at the end of the Policy Period. As was its practice, Wausau entered into an agreement with RMT whereby RMT would make 11 equal monthly payments to Wausau in the amount of $50,000. The twelfth payment was due on April 28, 1996, in the amount of $46,359. There is no dispute that the debt to Wausau for unpaid premiums is in the ordinary course of business between a worker's compensation insurance carrier and the insured. There is, likewise, no dispute that the agreement was made according to ordinary business terms. The only issue remaining in this case is whether the payment made on January 14, 1997, and the payment made on February 14, 1997, were made in the ordinary course of business between RMT and Wausau. I find that they were. Before the Policy Period at issue here, RMT had previously entered into an agreement with Wausau to amortize payments for unpaid premiums.[29] An audit dated December 19, 1994, discovered an unpaid annual premium in the amount of $262,567. RMT and Wausau entered into an agreement whereby RMT paid the unpaid premium in five installments of $45,000 each and a sixth installment of $37,567. RMT made the payments essentially according to the payment schedule.[30] The agreement for the Policy Period was similar, save for the fact that Wausau allowed RMT 12 months, instead of six months, to make the payments. But the unpaid premium for the Policy Period was $596,359, rather than $262,567. Thus, it was consistent with the business practice between Wausau and RMT that Wausau required monthly payments that ranged from $45,000 to $50,000. RMT claims that the two payments at issue here were outside the ordinary course of dealings between these parties because the payments were both 15 days past the due date.

Again, the Eighth Circuit offers guidance in this area. In *Lovett,* the Court compared the pre-preference period with the preference period to determine if the payments were sufficiently consistent to show that payments in the preference period were made in the ordinary course of business.[31] In that comparison, the Court found that the average age of invoices upon payment in the pre-preference period was 62 days, while the average age of invoices upon payment in the preference period was 52 days.[32] The Court then found that even though payments were made somewhat sooner in the preference period than in the preceding 12 months, that difference was not sufficiently significant to show that the payments were not in the ordinary course of business dealings between the parties.[33] Using the same analysis in this case the payment history reflects that seven payments were made in the pre-preference period and four payments were made in the preference period. I have already found that the last two payments were not in the ordinary course of business dealings between the parties so I will exclude those payments from the analysis. The chart below reflects the nine payments at issue:

| Amount | Date | Days Late |
|---|---|---|
| | Pre–Preference | |
| $50,000 | 5/30/96 | 0 |
| 50,000 | 6/28/96 | -2 |
| 50,000 | 7/30/96 | 0 |
| 50,000 | 8/28/96 | -2 |
| 50,000 | 10/07/96 | 8 |
| 50,000 | 11/04/96 | 5 |
| 50,000 | 12/14/96 | 14 |
| Total days late | | 23 divided by 7 = |
| Average days late | | 3.29 days |
| | Preference | |
| 50,000 | 1/14/97 | 15 |
| 50,000 | 2/14/97 | 15 |
| Total days late | | 30 divided by 2 = |
| Average days late | | 15 days |

**29.** *See* Doc. # 37.

**30.** *Id.* at pg. 635.

**31.** *Lovett v. St. Johnsbury Trucking (In re Transportation Systems International, Inc.),* 931 F.2d 494, 497 (8th Cir.1991).

**32.** *Id.* at 498.

**33.** *Id.*

In this case RMT made payments to Wausau on average 11.7 days later in the preference period than in the pre-preference period. I find, based upon the analysis in *Lovett,* that such a discrepancy in the payment record is not sufficiently inconsistent with RMT's previous payment history to be preferential. As such, I will enter judgment in favor of Wausau as to the transfers on January 14, 1997, and February 14, 1997, in the amount of $100,000.

Since I find that the transfers on January 14, 1997, and February 14, 1997, are excepted from avoidance pursuant to 11 U.S.C. § 547(c)(2), I need not reach the other defenses raised by Wausau.

An Order in accordance with this Memorandum Opinion will be entered this date.