JAMES BOWMAN, APPELLEE, V. AMERICAN HOME
ASSURANCE COMPANY, A CORPORATION, APPELLANT.
213 N. W. 2d 446

Filed December 7, 1973. No. 38981.

Boland, Mullin & Walsh, Timothy J. Pugh, and Robert D. Mullin, Jr., for appellant.

Brower & Treadway and Larry D. Bird, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

WHITE, C. J.

This is an action on a contract of insurance. The insured, James Bowman, seeks to have his insurer pay for damage done to an airplane covered under a policy issued by the insurer, American Home Assurance Company. The insurer argues that the insured did not have title as defined under the Uniform Commercial Code at the time of the loss and therefore asserts that the insured had no insurable interest at the time of the loss and should be denied recovery. The insured had the verdict and judgment at trial. The insurer appeals. We affirm.

James Bowman, the appellee-insured, and Keith Moeller were engaged in a partnership doing business as Bowman Hydro-Vat in Fremont, Nebraska. The partnership purchased a twin-engine Cessna in 1969. Upon

purchasing the aircraft, Bowman applied for and obtained a policy of insurance issued by the appellant-insurer, American Home Assurance Company, insuring the aircraft during the period from December 23, 1969, through December 23, 1970. The named insured under the policy was James Bowman.

In December of 1970, Bowman and James Hemmer entered into negotiations for the sale of the plane to Hemmer. On December 12, 1970, Bowman and Hemmer agreed upon a price of $18,500 for the purchase of the aircraft and Hemmer paid $15,000 down. The remaining $3,500 was to be paid later in cash or through its equivalent in aircraft instrument instruction which Hemmer was to give to Bowman. Hemmer requested a bill of sale signed by both partners to protect himself, and to comply with the Federal Aviation Administration requirements for the transfer of an aircraft. Bowman testified that it was agreed that he was to remain the owner of the aircraft until "we were able to fill out the necessary paperwork." Hemmer, the buyer, testified numerous times that he was to be the owner when he received the bill of sale. This was to allow the buyer to comply with the Federal Aviation Administration requirements and make arrangements for insurance prior to the time he was to become the owner. Bowman also testified that he told Hemmer that he would leave his insurance in effect until it expired on December 23, 1970, only 11 days later. Bowman retained possession of the plane.

On December 15, 3 days later, Bowman contacted Hemmer and asked Hemmer if he wanted to go with him on a business trip to Kansas. The purpose of the flight was for Bowman to transact some business in Kansas. Upon their return to Fremont, Hemmer asked Bowman for permission to use the plane on the following Friday and Saturday. Bowman and Hemmer specifically examined Bowman's insurance policy to ascertain whether it would provide coverage while Hemmer flew the plane.

Bowman then gave Hemmer permission and Hemmer took the plane to Columbus. On December 16, Hemmer flew the plane from Columbus to Fremont to obtain the bill of sale, but it had not been signed so he returned to Columbus without it.

On December 18, Hemmer flew the plane to Mitchell, South Dakota, pursuant to the permission granted by Bowman. In attempting to take off from Mitchell, the tip of a wing caught in a snow bank causing extensive damage to the aircraft.

Hemmer testified that the Federal Aviation Administration regulations require that a registration certificate be in an aircraft before title to the plane can be transferred to a new owner, and that once the bill of sale is received, it is attached to a new registration application and sent to the Federal Aviation Administration. A pink copy of the new registration is placed in the aircraft to serve as a temporary registration. This paperwork had not been completed at the time of the loss because the bill of sale had not yet been received. The registration certificate in the aircraft at the time of the accident showed James Bowman as the owner.

The signature of Bowman's partner was obtained and the bill of sale was mailed to Hemmer on December 18, the day of the accident. Hemmer received the bill of sale on December 20. The bill of sale was in blank form and had not been filled out at the time Hemmer received it. It was understood that Hemmer was to fill out the necessary information on the bill of sale. Bowman filed an accident report after the accident and indicated he was the owner.

The controversy between the parties centers around two provisions of the Uniform Commercial Code. Section 2-501, U. C. C., provides in part:

"(2) The seller retains an insurable interest in goods so long as title to or any security interest in the goods remains in him * * *."

The case was tried to the jury on the theory that

the seller retained an insurable interest in the goods as long as title to the goods remained with the seller. Both parties agree this was the appropriate standard for submission of the case to the jury. Section 2-401, U. C. C., details the concept of passage of title:

"(2) *Unless otherwise explicitly agreed* title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place * * *." (Emphasis supplied.)

As section 2-501, U. C. C., provides, the seller has an insurable interest until title passes to the buyer. Under section 2-401, U. C. C., title passes to the buyer (1) at the time and place where the seller completes his performance with reference to the physical delivery of the goods or (2) at any other time explicitly agreed to by the parties. As dictated by the Uniform Commercial Code, the trial court submitted two factual questions to the jury. First, whether the seller had completed physical delivery of the goods.. Second, whether there was an explicit agreement between the buyer and the seller as to the time when title was to pass. A jury finding in favor of the insured upon either of these factual issues supports the verdict. Where reasonable minds might draw different inferences or conclusions from the evidence, it is within the province of the jury to decide the issues of fact and the jury verdict will not be set aside unless it is clearly wrong. Mustard v. St. Paul Fire & Marine Ins. Co., 183 Neb. 15, 157 N. W. 2d 865 (1968).

There was substantial evidence from which the jury could have inferred that the seller had not completed physical delivery of the goods. The evidence shows that the buyer was only given limited use of the plane to make the trip to South Dakota. The buyer even asked the seller for permission to use the plane for this one

trip. The seller had only granted a limited possession of the plane to the buyer, even though the buyer had possession of the plane for 3 days prior to the accident.

The jury could have also inferred from the evidence that the buyer and seller had an explicit agreement that title was to pass upon the completion of the "necessary paperwork." The code itself provides no definition of the term "explicit" as used in section 2-401, U. C. C. In Harney v. Spellman, 113 Ill. App. 2d 463, 251 N. E. 2d 265, 6 U. C. C. Rptng. Serv. 1185 (1969), the court defined "explicit" in reference to section 2-401, U. C. C., as follows: "The term 'explicit' means that which is so clearly stated or distinctly set forth that there is no doubt as to its meaning." See, also, Binkley Co. v. Teledyne Mid-America Corp., 333 F. Supp. 1183 (E. D. Mo., 1971), affirmed 460 F. 2d 276 (8th Cir., 1972), for a discussion of the term explicit as used in another section of the code.

Bowman testified that it was agreed that he was to remain the owner of the aircraft until "we were able to fill out the necessary paperwork." The only other testimony by Bowman on this subject was the testimony of Bowman on cross-examination that he thought a sale had occurred on December 12, 1970. On redirect however, Bowman testified that he meant an agreement to sell the plane was entered into on December 12, 1970. The buyer testified numerous times that there was an agreement that he was to be the owner when he received the bill of sale. This was to allow the buyer to complete the Federal Aviation Administration requirements and make arrangements for insurance prior to the time he was to become the owner. From all this testimony the jury could infer that there was an explicit agreement. The credibility of the witnesses and weight to be given to their testimony are for the triers of fact. First Nat. Bank of Omaha v. First Cadco Corp., 189 Neb. 734, 205 N. W. 2d 115 (1973). On the record as a whole, we cannot conclude that there was not suf-

ficient evidence to support a jury finding that there was an explicit agreement as to the passage of title of the aircraft.

The evidence showed that the bill of sale sent to the buyer from the sellers on the day of the accident was not signed by both sellers until the day of the accident. The bill of sale was not received by the buyer until several days after the accident, and even at this time it remained in blank form. The parties knew that the buyer would fill in and complete the bill of sale after he received it. Thus, it is clear from the evidence that "completion of the necessary paperwork" involved more than the mere signing of the bill of sale by both sellers. It at least included receipt of the blank bill of sale by the buyer, but it could also have included the action of the buyer in filling out the necessary Federal Aviation Administration papers and completing the bill of sale. None of the above steps had been completed at the time of the accident, and therefore the time of the completion of the necessary paperwork had not occurred at the time of the accident.

In summary, the jury could reasonably have found from substantial evidence that either (1) the seller had not completed physical delivery of the goods under section 2-401, U. C. C., or (2) there was an explicit agreement for title to pass upon completion of the necessary paperwork which had not occurred at the time of the accident. Under either of these findings title had not passed to the buyer under section 2-401, U. C. C., and therefore under section 2-501, U. C. C., the sellers retained an insurable interest. For these reasons we affirm the judgment of the District Court.

AFFIRMED.