# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

No. 01-6040 EM

In re: Laclede Steel Co.,

        Debtor.

Concast Canada, Inc.,

        Appellant,

   v.

Laclede Steel Co.,

        Appellee.

Appeal from the United States
Bankruptcy Court for the Eastern
District of Missouri

Submitted: November 30, 2001
Filed: January 2, 2002

Before KOGER, Chief Judge,  SCOTT and DREHER, Bankruptcy Judges.

SCOTT, Bankruptcy Judge

Laclede Steel Co. and Concast Canada, Inc. had been engaged in business for many years.  The formal terms of their dealings required that Laclede pay its obligations to Concast thirty days after invoicing.  In the ordinary course of their dealings, however, they did not adhere to these requirements.  Rather, the average time it took Laclede to pay its obligations to Concast, prior to the 90 day preference

period, was 52 days, although at least one payment had been as late as 70 days past invoicing.

When Laclede met with financial difficulty, Concast did not exert any pressure for earlier payment. Rather, as it had done in the past, Concast waited for payment. The last payment prior to the filing of the chapter 11 case was made with four checks.[1] The checks were dated July 15, 1998. They all cleared the bank on November 19, 1998, eleven days prior to the filing of the chapter 11 case. Nothing was unusual about this transaction except for one fact: the payments were 177 days beyond invoicing, a period that even Concast characterizes as "excruciatingly late."

When Laclede sought to avoid the payments as preferences, Concast defended on the basis that the payments were made in the ordinary course of business. At trial before the bankruptcy court, the parties disputed only whether the payments were ordinary as between the parties and whether the payments were made according to ordinary business terms. 11 U.S.C. § 547(c)(2)(B), (C). The bankruptcy court[2] concluded that, although late payments were ordinary within the context of the industry standards, the payment made 177 days beyond invoicing was not in the ordinary course of the business affairs of the debtor and the transferee. Concast appeals the decision of the bankruptcy court, arguing that the bankruptcy court improperly focused solely upon the fact that the payment was made so long after invoicing. We affirm the conclusions of the bankruptcy court.

---

[1]The payment was made by four separate checks, although they were all apparently sent together, each had the same date, and all cleared the bank on the same date. The parties do not indicate whether this was the usual course for the debtor to make payment by separate checks for what appears to be a single transaction.

[2]The Honorable Barry S. Schermer, United States Bankruptcy Judge for the Eastern District of MIssouri.

We review the bankruptcy court's choice of the appropriate legal standard <u>de novo</u> inasmuch as that question is one of law.  <u>See</u> <u>Hartford Underwriter's Ins. Co. v. Magna Bank, N.A. (In re Hen House Interstate, Inc.)</u>, 150 F.3d 868 (8th Cir. 1998), <u>aff'd</u>, 530 U.S. 1 (2000).  The court's application of the statute to the facts of the case, <u>i.e.</u>, whether the payments were made in the ordinary course of business, is reviewed under the clearly erroneous standard.  <u>In re U.S.A. Inns of Eureka Springs, Arkansas</u>, 9 F.3d 680, 685 (8th Cir. 1993).

Section 547 permits the chapter 11 debtor in possession to avoid certain payments made within the ninety days prior to the filing of the bankruptcy petition. In this instance, the parties do not dispute that the payments were preferential as defined in section 547(b).  Rather, the parties dispute the application of the ordinary course of business exception to the  avoidance action.  Section 547 provides in pertinent part:

    (c)  The trustee may not avoid under this section a transfer–

        (2) to the extent that such transfer was –

            (A)  in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

            (B)  made in the ordinary course of business or financial affairs of the debtor and the transferee; and

            (C) made according to ordinary business terms.

11 U.S.C. § 547(c)(2).

Under this exception, the defendant has the burden of separately demonstrating the three prongs of the exception. Only the second prong is at issue in this appeal. Specifically, the bankruptcy court determined that the payment, constituting four checks, made 177 days after invoicing, was not in the ordinary course of business of

the parties because the payment was not consistent with the prior payment patterns between the parties. See Lovett v. St. Johnsbury Trucking, 931 F.2d 494 (8th Cir. 1991)(establishing that the cornerstone of the peculiarly factual analysis to be applied is consistency with the parties' prior business transactions). After a careful consideration of the arguments of the appellant and appellee, we conclude that the bankruptcy court was correct in its analysis of the law and its application of the law to the facts of this case.

In Lovett v. St. Johnsburg Trucking, 931 F.2d 494 (8th Cir. 1991), the United States Court of Appeals for the Eighth Circuit articulated the general standard for determining whether a transaction is within the ordinary course of business.  The court concluded that there was no particular test which was required to be applied, but, rather, the courts should engage is a "peculiarly factual analysis," the cornerstone of which is the consistency of the transaction in question as compared to other, prior transactions between the parties.  Lovett, 931 F.2d at 497.  In Lovett, as in this case, the timing of the payments was the determining factor in the analysis.  The Court of Appeals concluded that, since the payments sought to be avoided were consistent with prior practice, the payments were made in the ordinary course between the parties, even though the creditor had insisted that the debtor accelerate the payments as much as possible.  Thus, in Lovett, the Court of Appeals looked to the timing of the payments, and found that factor to be of overriding importance, to the exclusion of the fact that the creditor pressured the debtor for payment.  Since the timing of the preferential payment was consistent with the timing of the payment in prior transactions, the ordinary course of business exception applied to preclude avoidance of the  transfer under section 547(b).

The Eighth Circuit Court of Appeals has been consistent in following this standard and in its application.  Most recently, in Gateway Pacific Corp. Unsecured Creditors' Committee v. Expeditors International of Washington, Inc. (Gateway Pacific Corporation), 153 F.3d 915 (8th Cir. 1998), the Court of Appeals again

indicated that the controlling factor was the consistency of prior practice between the parties during the pre- and preference periods. In Gateway, as in Lovett, the court focused upon the timing of the payments. It is noteworthy that in Gateway, as in this case, the transferee creditor argued that the other consistencies between the periods overcame the single inconsistency – the lateness of the payment in the preference period compared to earlier transactions. The Court of Appeals rejected this argument, stating that the significant change in the payment pattern was sufficient to remove the transaction from the ordinary course of business exception.

While it is true that a number of decisions, including Central Hardware Co. v. The Walker-Williams Lumber Co. (In re Spirit Holding), 214 B.R. 891 (E.D. Mo. 1997), aff'd, 153 F.3d 902 (1998), articulate a four part test,[3] neither the test nor its application is inapposite to the Eighth Circuit holdings in Gateway and Lovett. Indeed, a scrutiny of the case authority applying that test, including Spirit Holding, indicates that there is a general focus upon one of the factors and, if any one of the factors is compellingly inconsistent with prior transactions, the payment is deemed to be outside of the ordinary course of business between the parties. That was the result in Spirit Holding. In Spirit Holding, the parties agreed that virtually every element, including the timing of the payment of the disputed transaction, was consistent with prior transactions, with one exception: the debtor had substituted a wire transfer for the check on which payment had been stopped. Thus, the only inconsistency was the form of payment. In determining that the transfer was within the ordinary course of business between the parties, the bankruptcy court reasoned that the mere change in the method of payments was insufficient to render the

---

[3]The factors the courts consider have been articulated as: (1) the length of time the parties were engaged in the transactions at issue; (2) whether the amount or form of tender differed from past practices; (3) whether the debtor or the creditor engaged in any unusual collection or payment activity; and (4) whether the creditor took advantage of the debtor's deteriorating financial condition. In re Spirit Holding, Co., 214 B.R. 891, 897 (E.D. Mo. 1997)(citing In re Grand Chevrolet, Inc., 25 F.3d 728, 732 (9th Cir. 1994)), aff'd, 153 F.3d 902 (8th Cir. 1998).

payment not in the ordinary course, particularly when there was no unusual collection activity and the debtor had paid other creditors by wire transfer.  The district court, however, reversed, concluding that the single factor, the replacement of the check by a wire transfer, was sufficiently inconsistent to remove the transaction from the exception.  Spirit Holding, 214 B.R. at 898-90.

Thus, while there may be four factors which may be analyzed, the case authority often focuses upon one of these factors and any significant alteration in any one of the factors may be sufficient to conclude that a payment was made outside the ordinary course of business.  As in Lovett, the timing of the payments from the debtor to Concast appears to be the most significant of the factors.  The other, separate factors regarding other conduct between the parties – whether the terms were changed, whether the creditor exerted any pressure for collection – have more weight in the analysis if the issue on timing is a close one.  Thus, a court may conclude that a transfer, even though a few days later than was the practice during the pre-preference period, may be ordinary if there is no change in the collection methods. See, e.g., Speco Corporation v. Canton Drop Forge, Inc. (In re Speco Corporation), 218 B.R. 390 (Bankr. S.D. Ohio 1998)(payments two to four days beyond the usual range of lateness and which were not the result of improper actions were within the exception); Marlow v. Federal Compress & Warehouse Co. (In re The Julien Company), 157 B.R. 834 (Bankr. W.D. Tenn. 1993).  In contrast, if there is any deviation in the collection method, the courts may be harsher in determining that a late payment was not in the ordinary course.  E.g., Fiber Lite Corp. v. Molded Acoustical Products, Inc. (In re Molded Acoustical Products, Inc.), 18 F.3d 217 (3d Cir. 1994), (historical payments 58 days after invoicing compared to 89 during the preference period, combined with alteration of collection activity, were outside the scope of the ordinary course of business exception).

This analysis is similar to the sliding scale employed in Fiber Lite Corp. v. Molded Acoustical Products, Inc. (In re Molded Acoustical Products, Inc.), 18 F.3d

6

217 (3d Cir. 1994), and, to some extent, urged by Concast. This analysis may have some merit, particularly when the issue is a close one, see, Speco Corporation, 218 B.R. 390, 401. Accordingly, while analysis of the debtor's payment history is a significant and guiding factor, the other factors may be considered according to their appropriate weight under the circumstances. Official Committee of Unsecured Creditors of R.M.L., Inc. v. Sabrina S.P.A. (In re R.M.L., Inc.), 195 B.R. 602 614 (Bankr. M.D. Pa. 1996). Thus, the facts that Concast took no action regarding shipments, did not alter its terms, or seek earlier payment, are indeed relevant. However, in this instance, the "excruciating" lateness of the payment outweighs the relevance of these factors. Compare In re R.M.L., 195 B.R. at 614 ("These negative proofs, however, while relevant, do not function to explain the unusual lateness of the preference payments in ordinary business terms or to offset the weight of such lateness in the subjective analysis."); Hassett v. Altai, Inc. (In re CIS Corp.), 214 B.R. 108, 120 (Bankr. S.D.N.Y. 1997).

Laclede made a payment that was 177 days beyond the invoice date and 103 days beyond the longest it had ever delayed payment. While late payments may be ordinary between the parties, and, thus, consistent with prior practice, the payments during the preference period must fall within the normal range of lateness. See In re CIS Corp, 214 B.R. 108 (preference payment 80 days late, compared to historical average of 51 days late was a significant difference); In re R.M.L., 195 B.R. 602 (historically, payments were 30-32 days late in contrast to 94 during preference period). Concast's assertion that the degree of lateness is not relevant is contradicted by the case authority as well as the policies behind the preference provisions. The question is whether the payment was consistent with the practice of the party, and thus, the degree of lateness is directly relevant. In the ordinary course between the parties, payment was made by Laclede on an average of 52 days following invoicing, with the latest payment being made 70 days beyond invoicing. The "excruciatingly late" payment in this case was clearly inconsistent with this practice between the parties prior to the preference period and, thus, was not in the ordinary course of

business between the parties, even though there was no other change in the course of conduct between the parties.

The fact that the debtor had a reason for the lateness of the payments does not render the payment ordinary between the parties. The debtor's explanation that the check was not delivered because it could not be covered is not an unusual one. It is, however, the reason for the preference provision: to ensure that all creditors are treated equally, even during the "slide into bankruptcy" – the period during which the debtor is unable to cover its obligations. The fact that the debtor could not cover the check to Concast is not a justification which brings the payment within the ordinary course of business exception. Rather, it is simply the reason the payment is a preference in the first place.

The fact that delay generally in the industry is an acceptable practice does not bring this payment within the ordinary course between the parties. That fact is not even relevant to this analysis under section 547(c)(2)(B), but, rather, is a factor to be considered in conjunction with the third prong of the test: whether the transaction was ordinary pursuant to terms in the industry.

In reaching the conclusion that the payments were not in the ordinary course between the parties, the bankruptcy court compared Laclede's past payments to the preference payments. By comparing the history and the preference period payments the bankruptcy court was able to determine that there was a significant deviation in the practice and, thus, a lack of consistency. The fact that the bankruptcy court determined that the payments were late – late beyond the normal conduct between the parties – does not, as asserted by Concast, constitute a rejection of the appropriate standard. Rather, it was a application of the standard as articulated by the Court of Appeals for the Eighth Circuit and one we cannot find was clearly erroneous. The Judgment is therefore affirmed.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL FOR THE
EIGHTH CIRCUIT