## In re BRIDGE INFORMATION SYSTEMS, INC., Debtor.

Scott P. Peltz, Plan Administrator, Plaintiff,

v.

The Denver Post Corp., Defendant.

Bankruptcy No. 01–41593–293.
Adversary No. 03–4109–293.

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

Sept. 4, 2003.

Michael A. Clithero, St. Louis, MO, for Defendant.

David B. Goroff, Derek L. Wright, Foley & Lardner, Chicago, IL, for Plan Administrator.

## MEMORANDUM OPINION

DAVID P. MCDONALD, Bankruptcy Judge.

This adversary proceeding is before the Court on the motion of The Denver Post Corporation (the "Transferee") for summary judgment under Fed.R.Civ.P. 56, made applicable to this proceeding by Bankr.R. 7056. Transferee argues that summary judgment is appropriate because there are no material facts in dispute so that it is entitled to judgment as a matter of law on its ordinary course defense under 11 U.S.C. § 547(c)(2). Because Transferee has established in its motion and the supporting affidavit that there are no material facts in dispute with respect to its affirmative defense under § 547(c)(2), the Court will grant its motion for summary judgment.

### JURISDICTION AND VENUE

This Court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 9.01(B) of the United States District Court for the Eastern District·of Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F), which the Court may hear and determine. Venue is proper in this District under 28 U.S.C. § 1409(a).

### FACTUAL AND PROCEDURAL BACK-GROUND

Plan Administrator for Reorganized Debtors ("Plan Administrator")[1], brought the instant adversary action against Transferee seeking to avoid as a preferential

---

1. Pursuant to Debtors' Joint Plan of Liquidation, confirmed by this Court on February 13, 2002, Plan Administrator has the exclusive authority to prosecute all claims under § 547 on behalf of the various Debtors' estates.

transfers under § 547(b) three payments totaling $22,225.71 that one of the debtors, Wall Street on Demand ("Wall Street"), made to Transferee. Plan Administrator is also attempting to recover the three payments from Transferee under § 550(a)(1).

The following facts are undisputed.[2] Wall Street filed its petition for relief under Chapter 11 of the United States Bankruptcy Code on February 15, 2001. Thus, the ninety day preference period under § 547(b)(4)(A) is November 15, 2000 through February 15, 2001 (the "Preference Period").

Transferee provided advertising services to Wall Street from February 2000 through February 28, 2001. (Dolezal Affidavit ¶ 30). Wall Street made the following payments to Transferee:

<u>TABLE 1</u>

| Invoice Date | Invoice Amount | Date Invoice Paid | Days Paid from Invoice Date |
|---|---|---|---|
| March 1, 2000 | $ 1,798.72 | March 15, 2000 | 16 |
| April 1, 2000 | $ 1,573.73 | May 18, 2000 | 48 |
| May 1, 2000 | $ 5,828.48 | May 18, 2000 | 18 |
| June 1, 2000 | $ 6,000.39 | June 16, 2000 | 16 |
| July 1, 2000 | $ 2,544.63 | July 21, 2000 | 21 |
| August 1, 2000 | $ 3,225.88 | August 18, 2000 | 18 |
| September 1, 2000 | $ 4,607.43 | September 22, 2000 | 22 |
| October 1, 2000 | $ 3,125.67 | October 20, 2000 | 20 |
| November 1, 2000 | $ 7,977.00 | November 24, 2000 | 24 |
| December 1, 2000 | $ 8,837.82 | January 2, 2001 | 33 |
| January 1, 2001 | $ 5,410.89 | January 19, 2001 | 19 |
| February 1, 2001 | $11,439.70 | Invoice Unpaid | NA |
| March 1, 2001 | $ 2,458.28 | Invoice Unpaid | NA |

The agreement between the parties required Wall Street to remit payment to Transferee within 20 days of the invoice date. (Dolezal Affidavit ¶ 3). As the table indicates, some of Wall Street's payments to Transferee both before and during the preference period were not within the 20 day requirement. The common practice, however, both specifically between Transferee and Wall Street and generally within the newspaper industry is to accept late payment from continuing customers, provided the payment is received within a reasonable amount of time after the due date. (Dolezal Affidavit ¶¶ 3 and 27).

Plan Administrator filed the instant adversary on February 10, 2003, seeking to avoid as preferential transfers under § 547(b) Wall Street's payments to the Transferee on the invoices remitted in November, December and January totaling $22,375.00 (the "Alleged Preference Payments"). Plan Administrator is also attempting to recover the Alleged Preference Payments from Transferee under § 550(a)(1). Transferee countered by asserting in its answer that Plan Administra-

**2.** The Court notes that because Peltz has failed to submit a response to Hyatt's motion, the Court will accept all the factual allegations contained in the motion and the supporting affidavit as true. *See Jackson v. Arkansas Dept. of Educ.*, 272 F.3d 1020, 1027–28 (8th Cir.2001).

tor could not avoid the Alleged Preference Payments because Wall Street remitted them to it in the ordinary course of business under § 547(c)(2).

Transferee filed this Motion for Summary Judgment on April 21, 2003. Pursuant to Rule 56(e), Transferee submitted the affidavit of Melinda Delzal, its credit manager, in support of its Motion for Summary Judgment. The Transferee argues in its motion that it is entitled to summary judgment because its motion and Dolezal's affidavit establish that there are no material facts in dispute so that it is entitled to judgment as a matter of law on its ordinary course defense under § 547(c)(2). The Court agrees and will grant its motion.

## DISCUSSION

### A. Introduction

Summary judgment is proper if the record viewed in the light most favorable to the non-movant demonstrates that there are no material facts in dispute so that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Evergreen Inv. v. FCL Graphics, Inc.*, 334 F.3d 750, 752 (8th Cir.2003). The movant has the initial burden of producing evidence that demonstrates the absence of a genuine issue of a material fact. *Shelter Ins. Cos. v. Hildreth*, 255 F.3d 921, 924 (8th Cir. 2001). Once the movant has met its initial burden, however, the burden then shifts to the non-movant to produce evidence that demonstrates the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e); *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir.1997) *cert. denied* 522 U.S. 1048, 118 S.Ct. 693, 139 L.Ed.2d 638 (1998).

■ Section 547(c)(2) provides that a debtor-in-possession or trustee may not avoid a preferential transfer to the extent that the transfer was: (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee; (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and (C) made according to ordinary business terms. The transferee must prove each of the three statutory elements by a preponderance of the evidence. *Official Plan Comm. v. Expeditors Int'l of Washington (In re Gateway Pacific Corp.)*, 214 B.R. 870, 874 (8th Cir. BAP 1997) *aff'd.* 153 F.3d 915 (8th Cir.1998).

■ Each of the three statutory elements under § 547(c)(2) is separate and distinct from the other two and the transferee must prove each element independently from the other two. *Jones v. United Sav. & Loan Assn. (In re U.S.A. Inns)*, 9 F.3d 680, 684 (8th Cir.1993); *Central Hardware Co. v. Walker–Williams Lumber Co. (In re Spirit Holding Co., Inc.)*, 214 B.R. 891, 897 (E.D.Mo.1997) *aff'd.* 153 F.3d 902 (8th Cir.1998). Accordingly, to prevail on its motion for summary judgment, Transferee must produce sufficient evidence to establish that there are no material facts in dispute as to any of the three statutory elements under § 547(c)(2).

### B. The Alleged Preference Payments were in payment for debts incurred in the ordinary course of business of both Walls Street and the Transferee under § 547(c)(2)(A).

■ A transferee must first establish that under § 547(c)(2)(A), the debtor made the challenged payment to it for debts incurred by the debtor in the ordinary course of business of both parties. A transferee may meet its burden under § 547(c)(2)(A) by establishing that the debtor remitted the payments in question as part of a long term relationship between the debtor and the transferee. *Stewart v.*

*Barry County Livestock Auction, Inc. (In re Stewart),* 274 B.R. 503, 513 (Bankr. W.D.Ark.2002).

▪ Here, Transferee provided advertising services to Wall Street for at least a year prior to the Petition Date. (Dolezal Affidavit ¶¶ 5–31). Also, Transferee invoiced Wall Street and Wall Street paid Transferee in the same manner both before and during the Preference Period. (Dolezal Affidavit ¶ 32 & Exhibit 14). Thus, the record indicates that Wall Street made the Alleged Preference Payments as part of its ongoing relationship with Transferee. Accordingly, Transferee has demonstrated that there are no material facts in dispute that the Alleged Preference Payments were in payment for debts incurred in the ordinary course of business of both Transferee and Wall Street under § 547(c)(2)(A).

*C. The Alleged Preference Payments were made in the ordinary course of business between Transferee and Wall Street.*

▪ Section 547(c)(2)(B) requires the transferee to demonstrate that debtor remitted the payments in question in the ordinary course of business between the parties. Although the analysis under § 547(c)(2)(B) is "peculiarly" factual, the central factor the court should examine is whether the transferee can demonstrate some consistency in both the timing and method of payment between the payment in question and the payments debtor made during the twelve months preceding the petition date (the "Pre–Preference Period"). *Central Hardware Co. v. Sherwin–Williams Co. (In re Spirit Holding Co.),* 153 F.3d 902, 905 (8th Cir.1998); *Lovett v. St. Johnsbury Trucking,* 931 F.2d 494, 497–98 (8th Cir.1991).

▪ Also, when the acceptance of late payments is the standard course of conduct between the parties prior to the pref-

erence period, late payments will be in the ordinary course of business under § 547(c)(2)(B) during the preference period as well provided that those payments are within the normal range of lateness. *Official Plan Committee v. Expeditors Int'l (In re Gateway Pacific Corp.),* 153 F.3d 915, 917–15 (8th Cir.1998); *Concast Canada, Inc. v. Laclede Steel, Inc. (In re Laclede Steel),* 271 B.R. 127, 133 (8th Cir. BAP 2002).

▪ Here, the undisputed evidence shows that Wall Street remitted payment to Transferee on average 22.375 days after the invoice date during the Pre–Preference Period and 25.333 days on average after the invoice date during the Preference Period. (Dolezal Affidavit Exhibit 14). Also, during the Pre–Preference Period, Wall Street's payments ranged from 16 to 48 days after the invoice date and during the Preference Period its payments ranged from 19 to 33 days after the invoice date. (Dolezal Affidavit Exhibit 14).

This evidence clearly reflects that although Wall Street made two of the three Alleged Preference Payments outside the twenty day period, late payments were the standard course of dealing between the parties both during and before the Preference Period. Also, Wall Street's timing of its payments during the Preference Period falls squarely within the normal range of time that it made payments to the Transferee during the Pre–Preference Period. Further, Wall Street's method of payment on the various invoices to Transferee was by check both before and during the Preference Period. Accordingly, the Transferee has demonstrated that there are no material facts in disputes that the Alleged Preference Payments were within the ordinary course of business between it and Wall Street under § 547(c)(2)(B).

### D. Wall Street made the Alleged Preference Payments according to ordinary business terms under § 547(c)(2)(C).

 Section 547(c)(2)(C) requires the transferee to demonstrate that the payment in question was made according to ordinary business terms. The transferee, to prevail under § 547(c)(2)(C), must establish that the payment was objectively ordinary in relation to the standards prevailing among similarly situated companies within the relevant industry with respect to the type of transaction in which the debtor made the challenged payment. *Jones v. United Savings & Loan Assoc. (In re U.S.A. Inns)*, 9 F.3d 680, 685 (8th Cir.1993). This does not require the transferee to establish a uniform practice within the relevant industry, however, but only requires the transferee to demonstrate that the payment in question falls within the general range of terms that are prevailing within the industry. *Id.*

 Concerning the type of evidence the transferee must produce to meet its burden of proof under § 547(c)(2)(C), it must produce evidence that establishes the outer limits of the range of terms prevailing among similarly situated firms when faced with the type of transaction in which the debtor made the challenged payment. *Id.* at 685–86; *In re Midway Airlines*, 69 F.3d 792, 797 (7th Cir.1995). This evidence need not be in the form of empirical data of the transferee's competitors' collection practices nor does it need to be in the form of expert testimony. *Midway*, 69 F.3d at 797. Rather, the transferee can meet its burden of proof under § 547(c)(2)(C) by producing the testimonial evidence of one its employees as to the range of the prevailing practices within the relevant industry provided that such testimony is based on the employee's first hand knowledge. *Id.; See also USA Inns*, 9 F.3d at 680 (holding that the testimony of transferee's president based on his observations of how the savings and loan industry handled delinquent payments on real estate loans was sufficient to establish the prevailing practices within that industry).

 Here, Transferee submitted the affidavit of Melinda Dolezal, its credit manager, to establish the range of practices prevailing within the newspaper industry concerning the acceptance of late payments from continuing customers. Dolezal first recited in her affidavit that she has been Transferee's creditor manager for the past nine years. (Dolezal Affidavit ¶ 1). She also states that during her nine year tenure with Transferee she has become readily familiar with the industry practice concerning the collection of accounts prevailing within the newspaper industry. (Dolezal Affidavit ¶ 2). Dolezal attested that the prevailing practice within the newspaper industry is to waive interest and accept late payments from a continuing customer if the customer pays the invoice within a reasonably short time of the due date. (Dolezal Affidavit ¶ 3). Also, as noted above, because Plan Administrator failed to file a response to Transferee's motion, the Court will accept these factual allegations as true.

The Court finds that the above statements in Dolezal's affidavit are sufficient to meet Transferee's burden of proof under § 547(c)(2)(C). Dolezal's testimony is based on her firsthand knowledge, which she obtained in her role as Transferee's creditor manager. Also, Dolezal's statements outlined the range of terms prevailing within the newspaper industry specifically relating to the acceptance of late payments from continuing customers. Thus, Dolezal's affidavit sufficiently establishes the range of practices prevailing in the newspaper industry concerning the acceptance of late payments by continuing customers and that the Alleged Preference

Payments fall within that range. Therefore, Transferee has established that there are no material facts in dispute that Wall Street made the Alleged Preference Payments according to ordinary business terms under § 547(c)(2)(C).

*E. Transferee is entitled to judgment as a matter of law under Rule 56(c).*

As outlined above, Transferee produced sufficient evidence that there are no material facts in dispute as to any of the elements of its ordinary course of business defense under § 547(c)(2). Also, Plan Administrator has failed to proffer any evidence that demonstrates the existence of a factual dispute for trial. Therefore, even viewing the record in the light most favorable to Plan Administrator, Transferee is entitled to judgment as a matter of law under Rule 56(c).

### CONCLUSION

Transferee established that the Alleged Transfer Payments were made in payment of a debt that Wall Street incurred in the ordinary course of business of both parties. Also, Transferee's undisputed evidence demonstrates that the Alleged Preference Payments were subjectively ordinary as between Transferee and Wall Street. Finally, Transferee has demonstrated that Wall Street remitted the Alleged Preference Payments to it according to ordinary business terms. Further, Plan Administrator has failed to produce any evidence that demonstrates the existence of any material fact in dispute for trial. Therefore, Transferee is entitled to judgment as a matter of law on its ordinary course of business defense under § 547(c)(2).

An Order consistent with this Memorandum Opinion will be entered this date.